ROBINSON v. DIX *et al.*

Decided November 12, 1881.

*(PATTON, JUDGE, absent.)

1. A deed by M. and H. to D. conveying land with general warranty of title commences: "That for and in consideration of $1,250.00 of which $646.00 is paid, and $604 00 the residue thereof is to be paid, whenever two bonds of $200.00 each are produced, which J. executed to R. ;" and the deed concluded: " It is expressly understood between all the parties to this deed, that a lien is retained upon the land described therein, until the two bonds set forth in this deed are paid by the said D., which is the residue of the purchase-money;" and this deed was executed only by the grantors M. and H. ; and the two bonds with interest to the date of the deed amounted to $604.00. HELD:

The true meaning of the last clause in the deed is, that it is expressly understood between all the parties to this deed, that a lien is retained for the unpaid purchase-money, $604.00, upon the land described

---

*Cause submitted before JUDGE P. took his seat.

in the deed, until the two bonds set forth therein are paid by the said D., which bonds in amount are the same as the unpaid purchase-money; and therefore it does not amount to an express agreement by D. to pay these two bonds to R. and the giving of a lien on this land by D. to secure the payment of these bonds to R. And though there was a lien on this land, when owned by M. and H. to secure the payment of these two bonds created by them, which was binding on said lands after the conveyance to D., yet R. cannot enforce this lien in a court of equity without making M. and H. parties defendant.

2. A demurrer to a bill for want of parties should properly name the necessary parties defendant, who have been omitted so as to enable the plaintiff to amend his bill and call the attention of the court to this defect; and if it does not, the demurrant cannot complain that the demurrer is not sustained; but the court ought in the final hearing of the cause, though the demurrer has been overruled, to decline to determine the cause on its merits, until the necessary parties defendant have been brought before the court by an amendment of the bill and have been given the opportunity to be heard.

3. A court of equity has jurisdiction to enforce a vendor's lien on land for the unpaid purchase-money represented by a bond, though it has been lost; and while its loss and that it cannot be found on search may be properly stated in the bill and supported by affidavit, yet the failure to make such allegation would be no ground of demurrer, as it may afterwards be done on the defendant's motion, or these facts may be shown in the progress of the cause.

4. If a defendant in a chancery suit in his answer alleges, that a third person or the plaintiff wrote a letter touching the matter in controversy, and files with his answer as part thereof what purports to be the original letter, such letter under section 40, chapter 125 of the Code will be regarded by the court as genuine without any proof of the hand-writing, unless the fact, that such letter was written by such third person or by the plaintiff, is denied by an affidavit,

Appeal from and *supersedeas* to a decree of the circuit court of the county of Nicholas, rendered on the 8th day of March, 1879, in a cause in said court then pending, wherein Benjamin H. Robinson was plaintiff, and James Dix and others, were defendants, allowed upon the petition of James Dix and Rachel Dix.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the case :

In December, 1871, B. H. Robinson filed his bill in the

circuit court of Nicholas county, against James Dix, Rachel E. Dix and Joseph D. Hanna. The bill states, that on February 25, 1860, the defendant, Joseph D. Hanna, executed to the plaintiff, B. H. Robinson, two bonds for the sum of $200.00 each with interest from their date, one due and payable on the 25th day of February, 1861, and the other on the 25th day of February, 1862; and that they are still due to the plaintiff and wholly unpaid; that these bonds have been lost or mislaid and cannot be produced; and he filed with his bill as a part thereof his affidavit stating all these facts. The affidavit says: "That said bonds have been lost or mislaid, so that they cannot be found." The bill further states, that the consideration of said bonds are in part payment of a tract of three hundred acres of land described as located in Nicholas county, which was sold by the plaintiff to said Hanna and conveyed to Fielding McClung, trustee for the wife of said Hanna, Clara W. Hanna, in which conveyance a lien was retained for the unpaid purchase-money, said two bonds; that on October 12, 1868, Fielding McClung, trustee, the wife of Joseph D. Hanna uniting in the deed, conveyed this tract of land to the defendant, Rachel E. Dix, wife of defendant, James Dix, an attested copy of which deed is filed with the bill as a part thereof. On the face of this deed a lien was expressly retained upon this land, until these two bonds of Joseph D. Hanna to the plaintiff, B. H. Robinson, were paid by the grantee, Rachel E. Dix; and the consideration of the deed was recited to be $1,250.00, of which $646.00 was paid in cash, and the residue, $604.00, was to be paid, whenever these two bonds of Joseph D. Hanna were produced. The bill further alleges, that Dix refuses to pay these two bonds and claims, that the land is not liable, unless these bonds are produced. The bill also alleges a willingness to give indemnity against the production of these bonds, as the court may direct. The prayer of the bill is, that this tract of land, or so much thereof as may be necessary, may be sold to pay these two bonds and interest and the costs of suit, and for general relief.

In August, 1878, James Dix demurred to this bill and the plaintiff joined in the demurrer. Several grounds of demurrer were stated, two only of which it is deemed necessary to state, to wit, that Fielding McClung, trustee, should have

been made a party plaintiff, and that the plaintiff was not en-
titled to the relief, until and unless he produced these two
bonds of Hanna, those being the terms of the contract; but
it does not assign as a ground of demurrer, that other neces-
sary parties defendant had not been made.   At the same time
he filed his answer, to which there was a general replication.
This answer states, that these bonds are not lost or mislaid but
have been assigned to and are owned by one E. Sacra, of Cov-
ington, Virginia.   This assignment was made, the answer al-
leges, under these circumstances.   Before the late war James
A. Alderson and Joseph H. Robinson were partners and at-
torneys for the owner of .these bonds and had them in Nicho-
las county, where they resided, for collection.   At the begin-
ning of the war they left the county with these bonds and
went to Virginia; and Joseph H. Robinson assigned these
bonds for a valuable consideration to E. Sacra, who now
owns them.   In proof of this two letters from him to Dix
were filed with the answer, in the first of which dated, Jan-
uary 25, 1870, he says:   "If you pay anything on these bonds,
it will be at your risk"; and he further says:   "They will
be produced."   The other letter is dated Decemcer 20, 1871,
and in it he says:   " I hold these two bonds," describing
them, "by regular assignment from Joseph Robinson," and
adds:   "As to the affidavit you ask me to make, I can't pos-
sibly do that now, as I am compelled to go to Louisiana on
business, but I think I will be at your court in May next."
The defendant, James Dix, as showing a further difficulty in
his paying these bonds, files with his answer a letter alleged
to have been written by the plaintiff, B. H. Robinson, to his
brother, dated Abingdon, March 19, 1872, which the answer
states is a reply to a letter inquiring about said bonds, in which
he says:   "You wished to know something about certain
bonds, which were held by Mrs. Hanna against Joseph D.
Hanna.   Joseph H. Robinson made the sale of the land for
Mrs. Hanna, and, I suppose, held the bonds.   Whose hands
they are in now I cannot say.   James A. Alderson was given
a power of attorney to collect all claims due Mrs. Hanna in
Virginia, if those bonds spoken of are not in the hands of
James Alderson or some of the Feamsters, they are not where
they should be, as they have never been trusted to any party

or parties with Mrs. Hanna's consent. She is the legal owner of the bonds.

James Dix in his answer says, that having this information he did not feel so free in paying these bonds to the plaintiff or to E. Sacra. He avers he has always been ready and willing to pay the amount of said bonds, whenever he would be safe to do so, and he is still; that he had then the money ready and was holding it to meet these two bonds, whenever he was made safe in doing so; that he feels compelled to demand some kind of security good and undisputable to indemnify him against loss. He has told plaintiff's attorney often, before this suit was brought and since, that he was always ready and willing to pay these bonds and still is, as soon as he was made safe in so doing by proper security; and this is all he ever had required or does now require; and he asks this at the hands of the Court. There was no affidavit to this answer, and though replied to generally, no evidence was taken to support its statements.

The Court on August 8, 1878, rendered a decree, which recited, that it appeared, that the defendant, J. D. Hanna, had been duly proceeded against as an absent defendant in the manner prescribed by law, and that Rachel E. Dix had been duly served with process more than two months; and she and said Hanna failing to appear and answer, the bill was taken for confessed as to her at rules, and set for hearing as to her and said Hanna, and the cause being heard upon the bill so taken for confessed and set for hearing and on the demurrer and answer of James Dix and plaintiff's replication to the answer, exhibits filed and proof taken, and the court being of opinion that there was a lien on the land in the bill named for $604.00 with interest from October 12, 1868, which now amounts to $959.94 with interest from this date, decreed, that unless said Hanna or Rachel E. Dix or some one for them pay the same together with the costs of this suit unto James L. Craig, special receiver, within ninety days, then John D. Alderson as special commissioner should proceed to sell at public auction the land in bill named, or so much thereof as might be necessary, after giving the notice prescribed in the decree, the sale to be made on terms prescribed. The receiver was required before receiving any money to give a bond in the

penalty of $5,000.00, conditioned according to law, and the special commissioner was required to give bond in the penalty of $2,000.00 conditioned according to law, before he received any money; and it was further required, that no sale should take place under this decree, until the plaintiff or some one for him should execute and file before the clerk bond with good personal security in the penalty of $2,000.00 conditioned to indemnify and save harmless said Rachel E. Dix, should any other person than the plaintiff turn out to be the owner of said purchase-money bonds, and to abide by and perform such other orders as may be made in that behalf.

Notice was given the plaintiff by Rachel E. Dix to correct this decree for errors on its face; and among them is stated, that the court decreed $115.00 more to be paid than was demanded by the bill. On February 15, 1879, in vacation pursuant to this notice the court did correct said decree by abating the amount decreed $117.14 as of August 8, 1878, the date of the decree corrected, making the decree for $842.80 with interest from August 8, 1878, instead of $959.94.

On March 3, 1879, Rachel E. Dix filed her demurrer and answer combined. In her answer she says, she denies the allegation in the bill, "that no part of said bonds have ever been paid, and the same and every part thereof is still due to the plaintiff, and that said bonds have been lost or mislaid." She says she has no covenant or agreement with the plaintiff nor privity with him; her agreement was with Fielding Mc-Clung, trustee; and she is ready to perform it. That agreement was to pay said bonds "whenever two bonds of $200.00 each are produced, which Jos. D. Hanna executed to Benj. H. Robinson." She says, the land in the bill named is worth a rent of $300.00 a year and if necessary to raise the sum sued for in plaintiff's bill, she asks that the land may be rented and not sold. On March 8, 1879, on motion of the plaintiff Fielding McClung, trustee, was made a defendant and filed his answer, admitting the truth of the statements in the bill, to which plaintiff replied generally. The answer of Rachael E. Dix was also replied to generally, and she asked a continuance of the cause, which the court refused and entered a decree, which was substantially the same as the former decree rendered in court and corrected by the order made in vacation,

except that instead of the money being paid to a special receiver it was required to be paid to the plaintiff, the amount being $842.80 with interest from August 8, 1878, till paid, and ninety days from the entering of this decree were given, within which to pay the sum with the costs of the suit; and if not done, the land was to be sold as prescribed in the former decree, and like bond was required of the special commissioner, and the plaintiff was as before required to give a like bond of indemnity with security to indemnify Rachel E. Dix.

From this decree an appeal and *supersedeas* to this Court has been awarded.

—— *Davis*, for appellants cited the following authorites: Fry Spec. Perf. ch. 2 § 102; 41 Me. 123; Fry Spec. Perf. ch. 2 §§ 105–111; *Id.* § 423; *Id.* § 608; *Id.* 622; 6 Leigh 187; Pow. Cont. 19; *Id.* 21; *Id.* 39; Doug. 277; 6 Gratt. 78; 2 Litt. 128; 3 Marsh. 402; 3 Litt. 293; 13 Ves. 77, 79; Code, p. 617, § 14; 13 W. Va. 659; 3 Munf. 94; 10 Leigh 507; 10 Ves. 510.

*A. C. Snyder*, for appellee cited the following authorities. Code, ch. 107, § 1; 5 W. Va. 402; 8 Leigh 658; Code, ch: 71, § 2; 9 Gratt. 131; 10 Gratt. 284.

GREEN, JUDGE, announced the opinion of the Court:

The first and most important question in this cause is: Were the necessary parties before the circuit court, so as to justify that court in rendering any decree on the merits of the cause? The bill states, that in 1860 the plaintiff, B. H. Robinson, sold to the defendant, Joseph D. Hanna, a certain tract of land but conveyed it to McClung as trustee for Clara W. Hanna, the wife of the purchaser, and that this trustee and she in 1868 conveyed this tract of land to defendant, Rachel E. Dix, wife of the defendant, James Dix. The bill further states, that Joseph D. Hanna, when said sale was made to him, as a part of the purchase-money of the land executed to the plaintiff two bonds of $200.00 each with interest from February 25, 1860, which are still due to the plaintiff, no part of them being paid; that when the plaintiff executed the deed to the trustee, McClung, for the use of Mrs. Hanna, he retained

a lien for ·the payment of these two bonds executed by
Joseph D. Hanna to him; and when the trustee, McClung,
and Mrs. Hanna conveyed this land to Mrs. Dix, they retained
a lien also for the payment of these two bonds.

The deed from the plaintiff, which reserved a lien for the
the payment of these two bonds as the bill alleges, was not
filed with the bill, and it nowhere appears in the record, and
of its contents we know nothing except the very brief state-
ment contained in the bill; nor do we know, whether it was
signed by Joseph D. Hanna or not or by the parties, to whom
it was executed, or why it was made to the grantees in the
deed. These reasons may be set out in the deed, but if so,
they are unknown to the court, this deed not appearing in the
record. The deed from McClung, trustee, and Mrs. Hanna
to the defendant, Mrs. Dix, is filed with the bill; but in it
there is no reference to this deed from the plaintiff, B. H.
Robinson, to McClung, trustee, for use of Mrs. Hanna, and
thus it furnishes us no means of knowing its character or con-
tents. Of it we have thus no knowledge except the very
brief allegation in the bill about its general character.

The deed to the defendant, Mrs. Dix, begins by reciting
that the consideration for it was $1,250.00, of which $646.00
was in cash and the residue $604.00, was to be paid, when two
bonds of Joseph D. Hanna to the plaintiff B. H. Robinson
were produced. These bonds are described, and they are the
two bonds for $200.00 each described in the bill; but there
is no statement as to what was the origin of these bonds. The
deed then conveys with general warranty this land to the de-
fendant, Mrs. Dix, describing it but not stating how the grant-
ors got title to it, and concludes thus: "It is expressly
understood between all the parties to this deed, that a lien is
retained on the lands described therein, until the two bonds
set forth in said deed are paid by Rachel E. Dix, which is the
residue of the purchase-money for the same." This deed was
executed by the grantors, McClung and Mrs. Hanna, only
not being signed by the grantee Mrs. Dix. The bill was filed
to enforce the payment of these two bonds as a lien on said
land, but it did not make either McClung, trustee, or Mrs.
Hanna, the grantors in this deed, parties, though they were the
parties, to whom the plaintiff had conveyed this land, and

though in his deed he had reserved a lien on this land for the payment of these bonds, as the bill alleges.

The brief of the appellee shows, that this suit was based on the idea, that Mrs. Dix by the deed to her had expressly agreed to pay these two bonds, executed by Joseph B. Hanna to the plaintiff, B. H. Robinson, of $200.00 each, and that she had expressly given a lien on this land for the payment of these two bonds; that it was this lien expressly created by the deed of 1868 to Mrs. Dix, which the plaintiff was seeking to enforce, and not the lien reserved in the deed made by the plaintiff to McClung, trustee for Mrs. Hanna, in 1860, which was to secure the payment of the same two bonds; and that therefore it was unnecessary to make either McClung, trustee, or Mrs. Hanna parties defendants to this bill. If it had been the lien reserved by the plaintiff in his deed made in 1860 to McClung as trustee for the use of Mrs. Hanna, that the plaintiff was seeking to enforce, it is obvious, that he would have had to make them, the grantees, parties defendant in the bill. But he was not seeking to enforce this lien under the deed of 1860, and therefore he neither filed this deed with his bill nor made the grantees in it parties to the suit. What the bill really sought, the appellee's counsel insists, was the enforcement of the lien reserved in the deed of 1868, and that this being the case Mrs. Dix, the grantee in this deed, was really the only necessary party defendant to this bill.

Are these views correct? Is this a true construction of the deed to Mrs. Dix filed with the bill? Is it true, that she thereby expressly agreed to pay the two bonds executed in 1860, eight years before, by Joseph D. Hanna to the plaintiff? Had she signed the deed, which she did not, it could not be so construed. All that is said in it is " that a lien is retained by the grantors in the deed, McClung, trustee, and Mrs. Hanna, until these two bonds are paid by Mrs. Dix, the grantee, which is the residue of the purchase-money." What is meant by the expression " which is the residue of the purchase-money?" It certainly could not mean, that these two bonds, which, the deed on its face showed, had been executed more than eight years before by a stranger to this deed and to a stranger to this deed, and which, so far as this deed showed, had no connection whatever with the land conveyed or with

the parties to this deed, were actually the residue of the pur-
chase-money due from Mrs. Dix to the grantors in this deed ;
for this would be a gross absurdity. Its obvious meaning
was, which bonds are *in amount the same as the* residue of the
purchase-money due from Mrs. Dix to the grantors in this
deed. What was the lien retained by the grantors in this
deed to Mrs. Dix, the deed does not in express language de-
clare; but it states, that the unpaid purchase-money was
$604.00. The obvious meaning of the deed in saying, " It is
expressly understood between all the parties to this deed, that
a lien is retained," is, that the vendor's lien for the unpaid
purchase-money was expressly retained, *i. e.*, a lien for this
$604.00, which Mrs. Dix still owed to the grantors in the
deed as the unpaid purchase-money. And what is the mean-
ing of the language, this lien " is retained until these two bonds
are paid by Rachel E. Dix?" Does it mean, as the appellee's
counsel says, that Mrs. Dix thereby agrees to pay these
two bonds, which were then more than eight years old and
were given, so far as the deed on its face shows, by a party
having no connection with or relation to the land to an-
other party, who had no connection with or relation to this
land or to the parties to the deed?

This is certainly not the meaning of the language used.
That language is clear and explicit : that the vendors' lien was
retained, till Mrs. Dix paid these bonds; and its effect is ob-
viously to confer on Mrs. Dix the privilege of paying off these
bonds and regarding such payment as a credit or discharge of
the unpaid purchase-money, which she owed the grantors.
The whole of this clause I understand to mean the same thing
as if it had read : "It is expressly understood between all the
parties to this deed, that a lien is retained for the unpaid pur-
chase-money, $604.00, upon the land hereby conveyed, until the
two bonds aforesaid are paid by Rachel E. Dix, which two
bonds are of the same amount as this unpaid purchase-money."

It would be improper for us to determine in the absence of
Mrs. Hanna, whether if Mrs. Dix failed to pay off these two
bonds promptly, so that when paid off years afterwards they
would not with the interest on them amount to the same as the
$604.00 with interest on it, that such payment would dis-
charge the whole lien retained for this $604.00, or only dis-

charge it *pro tanto.* Mrs. Hanna is directly interested in this question, and as she is not before the Court, it is improper for this Court to express any opinion on this point.

It is therefore my opinion, that this deed to Mrs. Dix did not create a lien on this land for the payment to the plaintiff of these two bonds dated in 1860; and that if he has any lien on this land, it is only by virtue of the lien, which, his bill states, was retained by him, when he made his deed to McClung, trustee for the use of Mrs. Hanna; and that therefore, when he seeks to enforce this lien, he must make them defendants to his bill. And that, as a complete determination of the controversy could not be had without the presence of McClung, trustee, and Mrs. Hanna, the court should have caused them to be made parties defendant by amendment of the bill, before it determined the cause on its merits. See Code of W. Va. chapter 125, section 58, page 608. The circuit court in its decree entered at the August term, 1878, construed this deed to Mrs. Dix, as I have done, as retaining a lien for the $604.00 with interest thereon from October 12, 1868, the balance of the unpaid purchase-money, but it by a blunder, I suppose, decreed that this amount was due to the plaintiff, while the two bonds he held did not at that time with their interest amount to this much by $117.14. The error of the holding, that the $604.00 and interest was due the plaintiff, was corrected by the vacation order.

The next enquiry is: Was there any defect in the bill other than the failure to make McClung, trustee, and Mrs. Hanna defendants, which would have made it proper for the court to sustain the demurrer? This bill, had all the proper persons been made defendants, may be regarded on the facts set forth in it as a bill to enforce a lien for the two bonds due the plaintiff from Joseph D. Hanna, which lien, the bill alleges, was reserved by the plaintiff in a deed made by him to Fielding McClung as trustee for Mrs. Hanna. The deed is not filed, and of course it is impossible to say, whether the plaintiff in fact ever had such lien; but as it may be, that such a lien was created by this deed, and as the bill alleges it was, it is not liable to be dismissed on demurrer, though it may be, that when produced the deed will show, that the plaintiff has no such lien as he

claims. Joseph D. Hanna may or may not be a party to this deed.

Another ground for demurrer to this bill is, that there is in it no allegation, that search has been made for the two bonds alleged in the bill to be lost. But it was admitted, that the allegations in the bill and in the affidavits made a part of it were not sufficiently definite and full to give a court of equity jurisdiction, when its jurisdiction was based on the loss of the bonds, yet it would not affect the jurisdiction of the court in this case, as it is based not on the loss of the bonds, but on its right to enforce a lien on a trust of land owned by the defendant, Mrs. Dix. In such a case, while it may be proper for the bill to state the loss of the bonds, and that they could not be found on search, and to submit to give such indemnity as is proper and the court may direct, yet as these are not of the essence of the jurisdiction in equity, the absence of them or the fact of their being done in an imperfect manner, is no ground for a demurrer, as they may be supplied by amendment or on motion of the defendant or by proof in the cause, and the plaintiff be still entitled to a decree. See *Hopkins* v. *Adams*, 20 Vt. 407.

Another ground of demurrer stated in the demurrer in this cause is, that the bill should have been filed in the name of Fielding McClung, trustee, for the use of B. H. Robinson. This would have obviously been improper, from what we have said.

The last ground of demurrer, that the plaintiff is entitled to no relief, till he produces the bond, is also clearly without foundation. It was obviously the principle ground relied on in the circuit court, as it has been the principle ground insisted on in this Court by the appellant's counsel. It is based on the idea, that the bill is, and can only be, based on the supposed lien for the payment of the two bonds created by the deed to Mrs. Dix; while, we have seen, no such lien was created, and the plaintiff's claim to relief is based merely on the deed executed by him, as alleged in the bill, to McClung as trustee of Mrs. Hanna, in which it is claimed this lien was reserved.

The only remaining ground of demurrer is, that McClung and Mrs. Hanna were not made parties to the bill. This, we have seen, would have been a good ground of demurrer to

the bill, had it been properly pleaded; but it was not. This ground of demurrer was not claimed in the demurrer actually filed. Where this is the ground of demurrer, it should generally be alleged in the demurrer, which should show, who are the proper parties who have been omitted, so as to enable the plaintiff to amend by making the proper parties defendant. See *Attorney General* v. *Jackson*, 11 Ves. 369, 370; *Pyle* v. *Price*, 6 Ves. 780, 781; *Attorney General* v. *Poole*, 4 Myln & Craig. 17; and if this be not done, the demurrant cannot in the Appellate Court complain, that the court below overruled his demurrer, as he would not suffer loss thereby ultimately, as the court at the final hearing of the cause, before it decided the case on its merits, should see, that all the necessary defendants are before the court and have an opportunity to be heard, though if the court sustained such a demurrer and gave leave to the plaintiff to amend his bill and make the proper defendants, there would be no error in its so doing. See *Stewart, adm'r* v. *Jackson*, 8 W. Va. 29; *Jameson, adm'r*, v. *De Shields*, 3 Gratt. 4; Story Eq. Pl. § 72. The court therefore did not err to the prejudice of the appellants in overruling the demurrer to the bill.

The next question is: Did the proceedings in the cause subsequent to the filing of the bill render it necessary for the court to refuse to render any decree in the cause on its merits, till the plaintiff amended his bill and made any other parties defendant besides those who had been made and McClung, trustee, and Mrs. Hanna? All the parties actually made defendants by the bill were necessary parties. The appellee's counsel claims, that Joseph D. Hanna was not a necessary party. This I presume is based on his idea, that Mrs. Dix had expressly agreed to pay his two bonds and had created a lien in his favor for the payment of these two bonds. But we have seen, that he was in this mistaken; and according to our views of the case Joseph D. Hanna was obviously a necessary party.

The appellee's counsel also claims, that James Dix was not a necessary party, and therefore his answer should be disregarded. This is based on the allegation in his brief, that he was not nor was his property bound for this debt. This however is an obvious mistake. The deed for the

property sought to be subjected to the plaintiff's debt was made in 1868, before our Code went into operation, and the land was not conveyed to her for her sole and separate use free from his debts and control. He had in it his marital rights, a right to the rents and profits of this land during marriage, and was therefore obviously a necessary party, when the bill proposed to have this land sold. His answer therefore is entitled to be considered. It is alleged, that this answer was replied to generally, and that no proof was taken to sustain any of the statements contained in it. This is true, but there were some exhibits in it, which under our law, as I understand it, required no proof, in order that they should be regarded as evidence by the court. With this answer were filed two letters written by E. Sacra to the plaintiff as he alleged in his answer. These letters notify him, that E. Sacra, the writer, has in his possession the two bonds named in the bill, and which are therein alleged to be lost, and that they had been assigned to him by Joseph Robinson, and he warns the plaintiff not to pay them to any one else. The appellee's counsel insists, that these letters cannot be considered by the court, because they were excepted to as evidence and were not proven to be genuine and were no doubt written by this respondent himself. As I understand the law, if the plaintiff meant to dispute the genuineness of these letters, he was bound to deny by affidavit, that they were written by E. Sacra. On February 5, 1828, see Sup. Rev. Code page 265, a law was passed, which provided, that in all actions thereafter brought on promissory notes, bills of exchange, drafts or other writings or endorsements, assignments or acceptances thereof, if the declaration alleges, that they were signed by any person, such writing shall be evidence and held as genuine without any proof of hand-writing, unless an affidavit was filed disputing its genuineness.

In *Kelly* v. *Paul,* 3 Gratt. 182, it was held, that when the declaration alleged the writing to have been made by the defendant but did not allege, that it was signed by the defendant, the case did not come within the statute, and the signature must be proven. But in the revisal of 1850 this statute was dropped; and a much more comprehensive one adopted, which is the one in our Code, see ch. 125 § 40 p. 605. Its

language is: "When a declaration or other pleading alleges that any person made, endorsed, assigned or accepted any writing, no proof of the handwriting of such person shall be required, unless the fact be denied by an affidavit with the plea which puts it in issue." It will be observed, that this statute is far more comprehensive than the former statute. The writing, which proved itself by the former statute, was confined to a writing, on which a common law suit was brought, and did not extend to any writing named in any pleading but a declaration; whereas the Code extended it to any writing alleged to be made in any pleading. The former law required, that the writing should be alleged in the declaration not only to have been made, but to have been signed. The Code only provides, that it should be alleged to have been made. Again by the former statute the writing had to be the one sued upon; by the Code it is extended to "any writing." It might have been regarded as questionable on the language used in the Code, whether the writing had not to be one named in a common law pleading; but its language, "other pleading," has been interpreted to include chancery pleading, as a bill in equity. See *James River and Kanawha Company* v. *Littlejohn and Littlejohn* v. *Fergusson et al.*, 18 Gratt. 53. The words "other pleadings" must obviously be construed to mean a plea in a common law suit or an answer in chancery. The word plea in the close of the section obviously is used in its comprehensive sense and means any pleading, as a replication in law or in chancery. I see no reason, why the broad words, "any person made any writing," should not be interpreted to include a letter concerning the matter in controversy alleged to have been written by any person in any pleading.

This law in the Code was, I think, based on the idea, that a writing of any sort, which would affect the rights of the parties, alleged in a pleading to have been written by any person, when the original was filed, ought in the absence of an affidavit denying it to be genuine to be regarded by the court as *prima facie* genuine. A very reasonable presumption, it seems to me, as it could not but be genuine, unless a forgery had been committed. And the Legislature seems to have regarded it in the absence of any proof as improbable, that a

felony had been committed.    We must therefore regard these
alleged letters of E. Sacra as genuine, as their genuineness
was never denied by affidavit.    While of course they do not
prove the facts stated in them, they do show, that E. Sacra
claimed to have possession of these two bonds, said in the bill
to have been lost, and that he claimed, that he was the owner
of them.    It was therefore the duty of the circuit court
on the filing of this answer of James Dix to require the
plaintiff, before the court proceeded further with the case,
to amend his bill and made E. Sacra a party defendant.

For the same reason the letter written by the plaintiff to
his brother, filed with the answer of James Dix, must be re-
garded by this Court as genuine.    This letter, the answer says,
was a reply to a letter regarding the two bonds named in the
plaintiff's bill.    If this were proven to be true, the plaintiff's
bill would apparently, unless sufficient explanation was made,
have to be dismissed; but there is no proof that this is true,
and the letter of the defendant does not show, that it referred
to these two bonds.    It speaks only of " certain bonds against
Joseph D. Hanna ;" and they may have been other bonds of
his and not those two named in the bill.    This letter there-
fore does not render it the duty of the court to have the bill
amended by the plaintiff.    It is also uncertain, who, the plaintiff
means in this letter to say, is the true owner of these "certain
bonds of Joseph D. Hanna."    He says, it was Mrs. Hanna ;
but it does not appear, what Mrs. Hanna is meant.    It might
mean Mrs. Clara W. Hanna, or it might mean Mrs. Margaret
Hanna named in the deed to Mrs. Dix as the party, who con-
veyed this land to the plaintiff, the writer of this letter, or it
might mean some other Mrs. Hanna.

The plaintiff, just before the final decree was entered in this
cause, moved the court, that Fielding McClung, trustee,
should be made a party defendant; and he was so made and
appeared by counsel and filed an answer ; but, so far as this
record shows, he was a mere trustee to hold the legal title
of this land for Mrs. Clara W. Hanna, and could not repre-
sent her in this cause.    In such a case it is necessary, that the
*cestui que trust* as well as the trustee should be made a de-
fendant.

We conclude therefore, that the circuit court erred in pro-

ceeding with this cause in the absence of these necessary parties. We decline to consider many questions, which have been argued before us, as it would obviously be as improper for us to consider and decide them in the absence of these necessary parties, as it was for the circuit court.

For these reasons the decree of the circuit court entered at the August term, 1878, must be reversed, as well as the order in vacation made February 15, 1879, and also the decree of March 8, 1879; and the appellants must recover of the appellee, Benjamin H. Robinson, their costs in this Court expended; and this Court proceeding to render such decree, as the court below ought to have rendered, must remand this cause to the circuit court of Nicholas county with instructions to grant to the plaintiff leave to file an amended bill making the necessary parties defendants within such time, as the circuit court may deem reasonable, and further to proceed with this cause upon the principles laid down in this opinion, and further according to the principles governing courts of equity.

JUDGES JOHNSON AND HAYMOND CONCURRED.